**CASE NO. 26-10149**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

**On Appeal from the United States District Court
For The Northern District of Texas**

**In the Matter of:**

**Claudio Vallejo, Plaintiff – Appellant**

**v.**

**Keller Independent School District, et al., Defendants – Appellees**

**APPELLANT'S OPENING BRIEF**

**BREWER STOREFRONT, PLLC**

William A. Brewer III
Texas State Bar No. 02967035
Joshua H. Harris
Texas State Bar No. 24127306

1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 of the Federal Rules of Appellate Procedure have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1) **Plaintiff-Appellant**:

   Claudio Vallejo

2) **Defendants-Appellees:**

   Keller Independent School District and Its Board of Trustees Charles Randklev, John Birt, Joni Shaw Smith, Micah Young, Chelsea Kelly, Chris Coker, and Heather Washington in their official capacities

3) **Counsel for Appellant:**

   William A. Brewer III; Joshua H. Harris/Brewer Storefront, PLLC

4) **Counsel for Appellees:**

   Timothy Edward Davis; Allison B. Allman; Bethany Pickett Shah/Jackson Walker LLP

   _/s/     William A. Brewer III_
   William A. Brewer III

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant requests oral argument because he believes it will significantly aid the decisional process.  Although the pleadings, motions, responses, replies, briefs, and record on appeal adequately present the facts and legal arguments, Plaintiff-Appellant believes that oral argument will aid in the disposition of this appeal, and Plaintiff-Appellant welcomes the opportunity to present oral argument before the Court.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** ............................................................... i

**STATEMENT REGARDING ORAL ARGUMENT** ....................................... ii

**I.   PRELIMINARY STATEMENT** ............................................................. 1

**II.   JURISDICTIONAL STATEMENT** ........................................................ 6

**III.   STATEMENT OF ISSUES** ..................................................................... 7

**IV.   STATEMENT OF THE CASE** ................................................................ 9

**V.   STATEMENT OF FACTS** ........................................................................ 11

**VI.   SUMMARY OF THE ARGUMENT** ....................................................... 14

**VII.   APPLICABLE STANDARDS** ................................................................. 18

**VIII.   ARGUMENTS AND AUTHORITIES** ..................................................... 20

**A.   The District Court Erred by Collapsing Plaintiff's Constitutional Claims Into Its Section 2 Analysis** ........................................................... 20

    **1.   The District Court Erred By Imposing the *Gingles* Preconditions on Plaintiff's Constitutional Claim** ........................................................... 20

    **2.   Intentional Vote Dilution Claims Are Governed by *Zimmer* and *Arlington Heights*, Not *Gingles*** ..................................................... 21

    **3.   The Complaint Plausibly Alleges That the KISD Electoral System Bears More Heavily on Hispanic Voters** ....................................... 22

    **4.   The Complaint Plausibly Alleges That Defendants-Appellees Maintain the Electoral System for Discriminatory Purposes** ...................... 23

    **5.   Plaintiff's Allegations More Than Satisfy Rule 12(b)(6)** ...................... 25

    **6.   Because Plaintiff Plausibly Alleged Intentional Vote Dilution, the Judgment Should Be Reversed** ...................................................... 26

**B.   This Case Does Not Seek Race-Based Redistricting, Therefore, the District Court Applied the Wrong Legal Standard Under Section 2** ........... 26

    **1.   Section 2 Requires a Totality-of-the-Circumstances Inquiry** .............. 26

    **2.   *Gingles* Is Not a Universal Requirement** ................................................ 29

3. *Petteway* Does Not Resolve the Question Presented ...............................33

4. Plaintiff's Claim is a Non-Districting Section 2 Claim .........................34

5. The District Court Erroneously Converted *Gingles* Into a Categorical Bar ..................................................................................................................37

6. Even if the Court Had Doubts About the Ultimate Merits, Dismissal With Prejudice Was Improper .......................................................................39

C. Plaintiff Plausibly Alleged a Section 2 Violation .......................................44

1. Keller ISD's Election System Dilutes Minority Voting Strength .........44

2. The Complaint Alleges Racially Polarized Voting and Bloc Voting ....45

3. The Complaint Alleges Persistent Minority Electoral Exclusion .......47

4. Cumulative Voting Provides a Viable Alternative Electoral System ...50

5. The Totality of Circumstances States a Plausible Claim ......................54

D. The Fee Award Must Be Vacated .................................................................56

1. Defendants-Appellees May Recover Fees Only if Plaintiff's Claims Were Frivolous, Unreasonable, or Without Foundation .............................56

2. Plaintiff's Theory Was Not Squarely Foreclosed by Controlling Precedent ...........................................................................................................57

3. The Fee Award Rests on the Same Legal Error as the Dismissal ........60

E. The Supreme Court's Decision in *Louisiana v. Callais* Provides an Independent Basis for Remand ........................................................................61

IX. CONCLUSION ...............................................................................................63

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Milligan,*
    599 U.S. 1 (2023)................................................................31, 33, 41

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).....................................................................*passim*

*Bartlett v. Strickland,*
    556 U.S. 1 (2009) (plurality opinion) .....................................30, 33, 41

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................24

*Brnovich v. Democratic National Committee,*
    594 U.S. 647 (2021)......................................................................30

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &*
    *Hum. Res.,*
    532 U.S. 598 (2001)......................................................................59

*Budinich v. Becton Dickinson & Co.,*
    486 U.S. 196 (1988)........................................................................6

*Christiansburg Garment Co. v. EEOC,*
    434 U.S. 412 (1978).............................................................19, 55, 56

*Dillard v. Chilton Cnty. Bd. of Educ.,*
    699 F. Supp. 870 (M.D. Ala. 1988) ...........................................49, 50

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,*
    313 F.3d 305 (5th Cir. 2002) .......................................................42

*Growe v. Emison,*
    507 U.S. 25 (1993).....................................................................*passim*

*Holder v. Hall,*
    512 U.S. 874 (1994) (plurality opinion) .................................50, 51, 52

*Hughes v. Rowe*,
449 U.S. 5 (1980)................................................................................19, 56

*Hunter v. Underwood*,
471 U.S. 222 (1985)..........................................................................20, 23

*Janvey v. Dillon Gage, Inc. of Dallas*,
856 F.3d 377 (5th Cir. 2017) ...................................................................18

*Johnson v. De Grandy*,
512 U.S. 997 (1994).........................................................................*passim*

*League of United Latin Am. Citizens v. Perry*,
548 U.S. 399 (2006)..................................................................................23

*Leal v. McHugh*,
731 F.3d 405 (5th Cir. 2013) .............................................................17, 24

*Louisiana v. Callais*,
No. 24–109, slip op. (U.S. April 29, 2026) ....................................*passim*

*Neitzke v. Williams*,
490 U.S. 319 (1989)..................................................................................41

*Personnel Adm'r of Mass. v. Feeney*,
442 U.S. 256 (1979)..................................................................................23

*Petteway v. Galveston Cnty.*,
111 F.4th 596 (5th Cir. 2024) ............................................................32, 33

*Ray Haluch Gravel Co. v. Central Pension Fund of International
Union of Operating Engineers & Participating Employers*,
571 U.S. 177 (2014)....................................................................................6

*Rogers v. Lodge*,
458 U.S. 613 (1982).........................................................................*passim*

*Shaw v. Reno*,
509 U.S. 630 (1993)..................................................................................24

*Thornburg v. Gingles*,
478 U.S. 30 (1986)...........................................................................*passim*

*Vaughan v. Lewisville Indep. Sch. Dist.*,
62 F.4th 199 (5th Cir. 2023) ...................................................................*passim*

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977)...............................................................................*passim*

*Washington v. Davis*,
426 U.S. 229 (1976)...............................................................................21, 22

*White v. Regester*,
412 U.S. 755 (1973)...................................................................................23

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886)...................................................................................21

## Statutes

5 U.S.C. § 6103(a) ......................................................................................7

28 U.S.C. § 1291 ........................................................................................6

28 U.S.C. §§ 1331 and 1343 .......................................................................6

28 U.S.C. §§ 1331, 1343(a)(3)–(4) .............................................................6

42 U.S.C. § 1988 ......................................................................................55

42 U.S.C. § 1988(b) .................................................................................55

52 U.S.C. § 10301(a) ...........................................................................18, 26

52 U.S.C. § 10301(b) ........................................................................*passim*

52 U.S.C. § 10310(e) ...............................................................................55

Tex. Educ. Code § 11.059(a)–(c)................................................................51

Tex. Educ. Code § 11.054..........................................................1, 12, 34, 50

## Other Authorities

Fed. R. App. P. 4(a)(1)(A) .......................................................................6, 7

Fed. R. App. P. 26(a)(1)(C) .....................................................................6, 7

Fed. R. App. P. 26(a)(6)(A) ..................................................................7

Fed. R. Civ. P. 15(a)(2) ...................................................................42

Fed. R. Civ. P. 12(b)(6)..............................................................*passim*

S. Rep. No. 97-417 (1982) .........................................................*passim*

United States Constitution Fourteenth and Fifteenth Amendments .................*passim*

# I.    PRELIMINARY STATEMENT

Defendants-Appellee Keller Independent School District ("**Keller ISD**","", or "the "**District**", or "**KISD**") elects its Board of Trustees (the "**Board**") through an at-large, staggered, off-cycle system. All seven seats are elected district-wide. Elections are held in low-turnout May cycles. No minority-preferred candidate has been elected to the Board in decades, even though Hispanic residents comprise a substantial and growing portion of the community.

This case challenges that system under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments. Plaintiff-Appellant Claudio Vallejo ("**Vallejo**" or "**Appellant**") does not seek the creation of single-member districts. Instead, he alleges, and his expert opines,[1] that the at-large structure, combined with racially polarized voting and local conditions, denies Hispanic voters an equal opportunity to elect candidates of their choice. Plaintiff-Appellant proposes a different remedy: cumulative voting, a lawful remedy available under the Texas Education Code § 11.054, which allows voters to concentrate their votes without redrawing district lines.

---

[1] Matthew A. Barreto is a Professor of Political Science and Chicana/o Studies at the University of California, Los Angeles, and the Faculty Director of the UCLA Voting Rights Project. His scholarship and professional work focus extensively on voting rights, electoral behavior, and social science methodology, and he has served as an expert witness in numerous Voting Rights Act cases nationwide. He has published multiple books and dozens of peer-reviewed articles on voting and political behavior, and co-founded the UCLA Voting Rights Project, a leading national institute dedicated to voting rights research and litigation support.

The district court did not evaluate those allegations under the statute's text. Section 2 directs courts to determine, based on the totality of the circumstances, whether an electoral system produces unequal electoral opportunity. The court instead imposed a categorical rule. It held that Plaintiff-Appellant's claim fails because he cannot satisfy the first *Gingles* precondition. It dismissed the case without the opportunity to replead on that basis alone.

The district court's approach epitomizes the very confusion the Supreme Court recently cautioned against in applying the Voting Rights Act. In *Louisiana v. Callais*, the Court emphasized that Section 2 must be interpreted in accordance with its text and constitutional limits, and warned against transforming judicially developed frameworks into rigid, atextual thresholds that displace the statute's governing standard. The decision below does precisely that. By elevating one component of a context-specific framework—the first *Gingles* precondition—into a dispositive prerequisite across all vote-dilution claims, the district court replaced the statute's totality-of-the-circumstances inquiry with a categorical rule untethered to Section 2's text. That error is not merely doctrinal; it reflects the broader analytical drift *Callais* identifies and corrects.

The mismatch is stark given the context in which *Callais* arose. That case addressed a districting dispute involving the configuration of electoral boundaries in a partisan setting. This case does not. Plaintiff-Appellant challenges an at-large,

nonpartisan election system and proposes a non-districting remedy. The concerns that animate the *Gingles* framework in districting cases—most notably, the need to assess whether a geographically compact majority-minority district can be drawn—do not translate cleanly to this context. By nonetheless treating the first *Gingles* precondition as dispositive, the district court extended a context-specific tool beyond its rationale and into a setting where its underlying assumptions do not hold. That is precisely the type of doctrinal overextension *Callais* cautions against.

At minimum, *Callais* confirms that remand is required. The district court dismissed this case before any factual development, based solely on Appellant's inability to satisfy the first *Gingles* precondition. But *Callais* directs courts to focus on current facts bearing on whether the challenged electoral system reflects intentional racial discrimination and whether minority voters are denied equal electoral opportunity under the governing framework. That inquiry cannot be conducted by mechanically asking whether a hypothetical majority-minority district can be drawn—especially where Appellant challenges a nonpartisan, at-large system and seeks a non-districting remedy. The complaint alleges present-day facts bearing directly on that inquiry: racially polarized voting, persistent exclusion of Hispanic-preferred candidates, an all-white Board, local representational disparities, and the continued maintenance of an electoral structure that predictably denies Hispanic

3

voters electoral opportunity. Those allegations required factual inquiry, not dismissal with prejudice.

The *Gingles* framework addresses when a minority group can demonstrate the potential to elect its preferred candidates through the creation of a reasonably configured single-member district. This case does not involve that question. Plaintiff-Appellant challenges an at-large system and seeks a non-districting remedy—cumulative voting—rather than the creation of a single-member district. Neither the Supreme Court nor this Court has held that *Gingles* is a universal prerequisite to every Section 2 claim. By treating it as one, the district court replaced the statute's text with a rigid threshold rule and treated a judicial framework as a categorical bar, even though Section 2 does not foreclose Plaintiff-Appellant's theory.

The complaint states a plausible claim under the correct standard. It alleges a cohesive minority population, racially polarized voting, and a persistent lack of electoral success. It alleges that the structure of Keller ISD's election system interacts with those conditions to prevent Hispanic voters from electing candidates of their choice. Those allegations go directly to the totality-of-circumstances inquiry. At the pleading stage, they must be accepted as true. This case therefore presents a threshold legal question: whether Section 2 permits a non-districting vote-dilution

claim evaluated under the statute's text, or whether *Gingles* operates as a categorical bar even where its rationale does not apply.

At minimum, the case should not have been dismissed with prejudice. Section 2 claims require a practical evaluation of real-world electoral conditions. That inquiry cannot occur on the pleadings alone. Here, Plaintiff-Appellant advanced a deliberate legal theory, supported by extensive pre-suit investigation, expert analysis, and a good-faith interpretation of the statute. The district court resolved that theory against him without discovery, with an underdeveloped record, and without drawing all reasonable inferences in Plaintiff-Appellant's favor.

Even if the district court were correct as to Section 2—which it is not—its judgment still cannot stand because it improperly dismissed Appellant's independent constitutional claims under the Fourteenth and Fifteenth Amendments. Those claims are governed by a different legal standard. Unlike Section 2, which addresses discriminatory results, the Constitution prohibits intentional discrimination and is analyzed under the framework set forth in *Arlington Heights* and *Zimmer*. The district court failed to apply that standard. Instead, it treated Appellant's inability to satisfy the *Gingles* preconditions as dispositive of the entire case. That was in error. At the pleading stage, Appellant was required only to allege facts supporting a plausible inference that the challenged system bears more heavily on Hispanic voters and is maintained, at least in part, because of that effect. The complaint does exactly

that. It alleges a racially polarized electorate, persistent exclusion of Hispanic-preferred candidates, and the continued maintenance of an at-large system despite its known discriminatory consequences. Those allegations more than suffice under Rule 12(b)(6). By collapsing the constitutional claims into its flawed Section 2 analysis, the district court applied the wrong legal standard and prematurely terminated claims that should have proceeded.

The court compounded its error by awarding attorneys' fees to Defendants-Appellees. A prevailing defendant may recover fees only when a claim is frivolous, unreasonable, or without foundation. This claim was none of those things. It was grounded in the statute's text, supported by factual investigation, supported by independent expert opinion, and not foreclosed by controlling precedent. Under settled law, that is not a basis to dismiss let alone fee shifting.

The judgment should be reversed. The fee award should be vacated. The case should be remanded for further proceedings.

## II.    <u>JURISDICTIONAL STATEMENT</u>

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff-Appellant asserted claims under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the United States Constitution.[2]

---

[2] 28 U.S.C. §§ 1331, 1343(a)(3)–(4); ROA.17–18.

This Court has appellate jurisdiction under 28 U.S.C. § 1291. On January 15, 2026, the district court entered an Opinion and Order dismissing Plaintiff-Appellant's claims with prejudice and awarding attorneys' fees to Defendants.[3] That order disposed of all claims on the merits.[4] Any unresolved issue concerning the amount of attorneys' fees did not defeat appellate finality.[5]

Plaintiff-Appellant timely filed his Notice of Appeal on February 17, 2026. The thirtieth day after entry of the January 15, 2026 Opinion and Order fell on Saturday, February 14, 2026.[6] The following Monday was a legal holiday.[7] Plaintiff's February 17, 2026 Notice of Appeal was therefore timely under Federal Rules of Appellate Procedure 4(a)(1)(A) and 26(a)(1)(C).[8]

### III. STATEMENT OF ISSUES

Whether the district court erred by dismissing Plaintiff-Appellant's Section 2 claim with prejudice based on a categorical rule that a plaintiff must satisfy the *Gingles* preconditions in every vote-dilution case, even where the plaintiff

---

[3] ROA.514–28.

[4] ROA.528.

[5] *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03 (1988); *Ray Haluch Gravel Co. v. Central Pension Fund of International Union of Operating Engineers & Participating Employers*, 571 U.S. 177, 183–86 (2014).

[6] ROA.1064–65.

[7] Fed. R. App. P. 4(a)(1)(A), 26(a)(1)(C).

[8] Fed. R. App. P. 4(a)(1)(A), 26(a)(1)(C), 26(a)(6)(A); 5 U.S.C. § 6103(a).

challenges an at-large electoral system and seeks cumulative voting rather than single-member districts.

Whether Plaintiff-Appellant plausibly alleged a Section 2 violation under the totality-of-the-circumstances standard.

Whether the district court erred by dismissing Plaintiff-Appellant's Fourteenth and Fifteenth Amendment claims based on the same *Gingles* analysis it applied to the Section 2 claim, without separately evaluating whether Plaintiff-Appellant plausibly alleged intentional discrimination under the governing constitutional framework.

Whether dismissal with prejudice was improper where Plaintiff-Appellant advanced an unresolved, fact-intensive Section 2 theory at the pleading stage.

Whether the district court abused its discretion by awarding attorneys' fees to Defendants-Appellees where Plaintiff-Appellant's claims were not frivolous, unreasonable, or without foundation.

Whether, in light of the Supreme Court's intervening decision in *Louisiana v. Callais*, this case should be remanded so the district court can evaluate Plaintiff-Appellant's Section 2 and constitutional claims under the new governing framework, rather than under the categorical *Gingles* rule it applied below.

## IV.   STATEMENT OF THE CASE

Plaintiff-Appellant Claudio Vallejo is a Hispanic resident and registered voter within Keller Independent School District.[9] He filed this action against Keller ISD and the members of its Board of Trustees in their official capacities.[10] Plaintiff-Appellant alleged that Keller ISD's at-large, staggered, off-cycle system for electing trustees dilutes Hispanic voting strength in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments.[11]

Plaintiff-Appellant filed his Original Complaint on February 14, 2025.[12] Defendants-Appellees moved to dismiss.[13] Plaintiff-Appellant then filed his First Amended Complaint on May 8, 2025.[14] The district court denied Defendants-Appellees' first motion to dismiss as moot.[15]

Defendants-Appellees moved to dismiss the First Amended Complaint under Rule 12(b)(6).[16] They argued that Plaintiff's Section 2 claim failed because Plaintiff-Appellant could not satisfy the first *Gingles* precondition.[17] Defendants-Appellees

---

[9] ROA.17–18.

[10] ROA.17–18.

[11] ROA.13–14.

[12] ROA.13.

[13] ROA.120.

[14] ROA.188.

[15] ROA.188.

[16] ROA.245.

[17] ROA.245–46.

also requested attorneys' fees.[18] Plaintiff-Appellant opposed dismissal and argued that *Gingles* does not categorically bar a non-districting Section 2 claim seeking cumulative voting as a remedy.[19]

On January 15, 2026, the district court granted Defendants' motion to dismiss.[20] The court held that Plaintiff-Appellant's inability to satisfy the first *Gingles* precondition was fatal to his Section 2 claim.[21] The court also dismissed Plaintiff's constitutional claims and awarded Defendants-Appellee's attorneys' fees.[22] The court dismissed Plaintiff-Appellant's claims with prejudice.[23]

Plaintiff-Appellant timely filed his Notice of Appeal on February 17, 2026.[24] This appeal challenges the dismissal with prejudice and the award of attorneys' fees.

---

[18] ROA.246.

[19] ROA.319–330.

[20] ROA.514.

[21] ROA.518–19.

[22] ROA.522.

[23] ROA.528.

[24] ROA.1064–65.

## V.    STATEMENT OF FACTS

Keller ISD is governed by a seven-member Board of Trustees.[25] Trustees are elected district-wide through an at-large system.[26] They serve staggered three-year terms.[27] The elections are held off cycle.[28]

Plaintiff-Appellant alleged that this structure dilutes Hispanic voting strength.[29] Under the at-large system, all voters in Keller ISD vote for every trustee position.[30] Plaintiff-Appellant alleged that this system allowed a cohesive white majority to control all seven seats and defeat candidates preferred by Hispanic voters.[31] Plaintiff-Appellant further alleged that staggered terms and off-cycle elections reinforce that effect by limiting the number of seats available in each election and depressing minority voter participation.[32]

The District's population is diverse.[33] Hispanic residents comprise a meaningful share of Keller ISD's citizen voting-age population.[34] Hispanic students

---

[25] ROA.190.

[26] ROA.203.

[27] ROA.203.

[28] ROA.189.

[29] ROA.203, 215.

[30] ROA.203.

[31] ROA.203–04.

[32] ROA.203–04.

[33] ROA.200–04.

[34] ROA.203.

also make up nearly one-quarter of the District's student body.[35] Yet all seven trustees are white.[36] Plaintiff-Appellant alleged that no Hispanic candidate had been elected to the Board in decades.[37]

Plaintiff-Appellant also alleged racially polarized voting.[38] He alleged that Hispanic voters are politically cohesive and that white voters vote sufficiently as a bloc to defeat Hispanic-preferred candidates.[39] Several Hispanic or Hispanic-surnamed candidates have run for the Board and lost.[40] Plaintiff-Appellant alleges that these patterns show that Hispanic voters lack an equal opportunity to elect candidates of their choice.[41]

The complaint further alleges that Keller ISD's electoral structure interacts with local social and political conditions to produce unequal political opportunity.[42] Plaintiff alleges disparities in student outcomes, teacher representation, and District

---

[35] ROA.194.

[36] ROA.190.

[37] ROA.204.

[38] ROA.203–04.

[39] ROA.203–04.

[40] ROA.204.

[41] ROA.203–04.

[42] ROA.201–04.

leadership.[43] He also alleges that the Board has taken actions that reflect and reinforce the lack of meaningful minority representation.[44]

Plaintiff-Appellant did not seek a majority-minority single-member district.[45] He proposed cumulative voting as a remedy.[46] Cumulative voting would allow voters to concentrate their votes behind preferred candidates without drawing geographic district lines.[47] Texas law permits independent school districts to adopt cumulative voting for trustee elections.[48]

Before filing suit, Plaintiff-Appellant's counsel conducted substantial factual and legal investigation.[49] Counsel reviewed the applicable statutes, legislative history, and federal authority.[50] Counsel also retained experts to evaluate racially polarized voting and possible electoral alternatives.[51] One such expert, Dr. Matt A. Barreto opined "[b]ased on my careful review, there is no question that across the totality of circumstances Hispanic citizens are denied equality, equal access, and the ability to elect their candidates of choice due to the confluence of socioeconomic

---

[43] ROA.206–08.

[44] ROA.206–09.

[45] ROA.216, 323.

[46] ROA.216, 637–38.

[47] ROA.637–38, 1023–44.

[48] Tex. Educ. Code § 11.054; ROA. 1023–44.

[49] ROA.850-53.

[50] ROA.850-53.

[51] ROA.851.

inequality, a history of racial discrimination, and the presence of racially polarized voting in Keller ISD."[52]

Based on that investigation, Plaintiff-Appellant advanced the theory that Keller ISD's at-large, staggered, off-cycle system violates Section 2 under the totality of the circumstances, even though Plaintiff-Appellant was not proceeding under the first *Gingles* precondition.[53]

## VI.     <u>SUMMARY OF THE ARGUMENT</u>

The district court dismissed this case based on a legal rule that does not exist in the Voting Rights Act. Section 2 asks whether an electoral system, as structured and operating in context, denies minority voters equal electoral opportunity. That inquiry is functional and fact-intensive. It necessarily considers both how the system operates and whether a workable alternative would provide equal opportunity.

Nothing in the text of Section 2—or in controlling precedent—transforms the *Gingles* factors into a universal threshold requirement. *Gingles* arose in a specific context: cases in which plaintiffs seek to establish that a reasonably configured single-member district would allow minority voters to elect their preferred candidates. This case is fundamentally different. Plaintiff-Appellant challenges an at-large electoral structure and proposes an alternative remedy—cumulative

---

[52] ROA.886.

[53] ROA.851-852.

voting—not the creation of geographic districts. The record confirms that Plaintiff-Appellant deliberately and transparently advanced a theory outside *Gingles*, based on the statute's text and the totality-of-circumstances inquiry. By converting *Gingles* into a rigid prerequisite, the district court displaced the governing statutory standard and treated *Gingles* as a categorical bar, even though neither the statute nor controlling precedent forecloses this type of claim. Treating *Gingles* as a universal prerequisite would collapse Section 2 into a districting-only statute, a limitation Congress did not enact.

Under the correct standard, the complaint easily states a plausible claim. The record alleges a textbook vote-dilution regime: Keller ISD employs an at-large, staggered, off-cycle election system that allows a cohesive white majority to control all seven board seats. Hispanic voters comprise a meaningful and growing share of the community, yet no Hispanic candidate has been elected to the Board in over two decades. The complaint further alleges racially polarized voting, depressed minority participation caused by off-cycle elections, and a history of electoral defeat for minority-preferred candidates. These allegations go directly to the Senate Factors and, taken as true, plausibly establish that Hispanic voters lack an equal opportunity to participate in the political process.

The record also identifies a viable, lawful remedy. Plaintiff-Appellant proposed cumulative voting—a system repeatedly recognized as an alternative to at-

large dilution—that would allow minority voters to concentrate voting power without requiring single-member districts. That matters. The district court's insistence on a majority-minority district showing ignores that Section 2 prohibits discriminatory results, not just failures to draw particular maps. Where, as here, the challenged system is at-large and the proposed remedy is non-district-based, the first *Gingles* precondition—geographic compactness tied to a single-member-district remedy—is inapposite in this context. Applying the first *Gingles* precondition here would require Plaintiff-Appellant to prove the feasibility of a remedy he does not seek, and that would not address the alleged injury.

At minimum, dismissal at the pleading stage was improper. That is particularly true where the governing legal framework is unsettled. Section 2 claims are inherently fact-intensive and require a "searching practical evaluation" of electoral realities. Yet the district court terminated the case before discovery, expert development, or any evidentiary record. That approach is irreconcilable with Rule 12(b)(6) and with the structure of Section 2 itself—particularly where Plaintiff-Appellant's theory is not foreclosed by binding precedent and was developed after substantial pre-suit investigation and expert analysis.

Even if the district court had correctly applied *Gingles* to Appellant's statutory claim—which it did not—the judgment still cannot stand. Plaintiff-Appellant independently asserted claims under the Fourteenth and Fifteenth Amendments,

alleging intentional discrimination and unconstitutional vote dilution. Those claims are governed by a different doctrinal framework. They require a showing that racial discrimination was a motivating factor in the adoption or maintenance of the challenged electoral system. They are analyzed under *Zimmer v. McKeithen* and *Village of Arlington Heights*, not *Gingles*. Geographic compactness is not an element of an intentional discrimination claim. The Equal Protection Clause does not condition relief on whether minority voters could form a majority in a hypothetical district.

The district court did not engage this distinction. It treated the failure of the statutory claim as though it were dispositive of the constitutional claims as well—an approach that collapses two separate bodies of law and eliminates a cause of action Congress and the courts have long recognized. The complaint plausibly alleges both discriminatory effect and discriminatory purpose. It alleges that the at-large system bears more heavily on Hispanic voters, that white bloc voting predictably defeats Hispanic-preferred candidates, and that Keller ISD has maintained its electoral structure in the face of these known effects without legitimate justification. It further alleges a history of voting discrimination in Texas, unresponsiveness by elected officials to minority community concerns, and Board conduct that reinforces rather than remedies the exclusion of Hispanic voters. These are precisely the kinds of allegations courts rely upon to infer discriminatory purpose

17

under *Arlington Heights* and *Rogers v. Lodge*. They required engagement. The district court provided none.

The fee award independently requires reversal. A prevailing defendant may recover fees only where the plaintiff's claims are frivolous, unreasonable, or without foundation. This record forecloses any such finding. Plaintiff-Appellant conducted extensive pre-suit investigation, analyzed governing law, retained experts, and expressly advanced a good-faith argument that *Gingles* does not control this type of claim. Even if ultimately unsuccessful, that is the opposite of frivolous. And where the dismissal itself rests on a contested legal question, a fee award cannot stand.

The judgment should be reversed, the fee award vacated, and the case remanded for further proceedings.

## VII.   <u>APPLICABLE STANDARDS</u>

This Court reviews de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6).[54] In conducting that review, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor.[55] A complaint need only contain sufficient factual matter to "state a claim to relief that is plausible on its face."[56] The plausibility standard does not require probability; it

---

[54] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013).

[55] *Iqbal*, 556 U.S. at 678; *Leal*, 731 F.3d at 410.

[56] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

requires only enough factual content to allow a reasonable inference that the defendant is liable.[57]

Section 2 of the Voting Rights Act prohibits any voting practice that "results in a denial or abridgement" of the right to vote on account of race.[58] A violation is established if, under the "totality of circumstances," minority voters "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."[59] The inquiry is functional and fact-intensive, requiring a "searching practical evaluation" of how the challenged electoral system operates in context.[60] Courts typically consider the Senate Factors as part of that analysis, but no single factor is dispositive.[61]

This Court reviews a district court's award of attorneys' fees for abuse of discretion.[62] However, any underlying legal determinations—including the interpretation of governing statutes and precedent—are reviewed de novo.[63] A prevailing defendant may recover fees only if "the plaintiff's action was frivolous,

---

[57] *Id.*

[58] 52 U.S.C. § 10301(a).

[59] *Id.* § 10301(b).

[60] *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986) (quoting S. Rep. No. 97-417, at 30 (1982)).

[61] *Id.* at 36–37, 45–46; *Johnson v. De Grandy*, 512 U.S. 997, 1011–13 (1994).

[62] *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 203 (5th Cir. 2023).

[63] *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 392 (5th Cir. 2017).

unreasonable, or without foundation[.]"[64] This standard is stringent and must be applied with caution to avoid discouraging good-faith civil-rights litigation.[65] A claim is not frivolous merely because it is unsuccessful or ultimately rejected.[66]

## VIII. ARGUMENTS AND AUTHORITIES

### A. The District Court Erred by Collapsing Plaintiff's Constitutional Claims Into Its Section 2 Analysis

#### 1. The District Court Erred By Imposing the *Gingles* Preconditions on Plaintiff's Constitutional Claim

The district court's error was not limited to Section 2.[67] It applied the same flawed premise to Plaintiff-Appellant's constitutional claims, treating the *Gingles* preconditions as a threshold requirement for claims governed by a different legal standard. That was legal error. The *Gingles* framework governs results-based claims under Section 2 of the Voting Rights Act, not constitutional claims alleging purposeful vote dilution. As Plaintiff explained below, courts analyzing intentional vote dilution claims do not require satisfaction of the *Gingles* preconditions, because those claims arise under a distinct doctrinal framework focused on discriminatory purpose, not electoral geometry or hypothetical districting.

---

[64] *Vaughan*, 62 F.4th at 203–04.

[65] *Vaughan*, 62 F.4th at 203–04.

[66] *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978); *Hughes v. Rowe*, 449 U.S. 5, 14 (1980).

[67] *See* ROA.518–24; *cf. Gingles*, 478 U.S. 30, 50–51 (1986) (preconditions designed for results-based Section 2 claims, not constitutional claims of intentional discrimination).

By importing *Gingles* into the constitutional analysis, the district court collapsed two separate bodies of law and imposed a heightened pleading burden that neither the Constitution nor Rule 12 permits. Nothing in Supreme Court or Fifth Circuit precedent requires a plaintiff to plead geographic compactness—or any other *Gingles* factor—to state an intentional discrimination claim. To the contrary, imposing such a requirement would effectively insulate intentional vote dilution from judicial review whenever minority voters are geographically dispersed (like here), a result fundamentally at odds with the Equal Protection Clause.

### 2. Intentional Vote Dilution Claims Are Governed by *Zimmer* and *Arlington Heights*, Not *Gingles*

Intentional vote dilution claims are governed by the framework articulated in *Zimmer v. McKeithen* and refined by *Arlington Heights*.[68] Under that standard, a plaintiff need only plausibly allege that racial discrimination was a motivating factor in the maintenance of the challenged electoral system and that the system operates to dilute minority voting strength.[69]

As the Fifth Circuit has long recognized, discriminatory intent in vote dilution cases is rarely proven by direct evidence and instead must be inferred from the "totality of the relevant facts," including whether the challenged system "bears more

---

[68] *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–68 (1977); *Rogers v. Lodge*, 458 U.S. 613, 617–18 (1982) (applying *Arlington Heights* factors to vote dilution claim).

[69] *Arlington Heights*, 429 U.S. at 265–66; *Rogers*, 458 U.S. at 618; *Hunter v. Underwood*, 471 U.S. 222, 227–28 (1985) (discriminatory purpose need not be sole or even primary purpose).

heavily on one race than another."[70] The relevant inquiry therefore considers circumstantial evidence such as historical discrimination, racially polarized voting, lack of minority access to the political process, unresponsiveness of elected officials, and the tenuousness of the policy underlying the electoral system.[71]

Crucially, these standards apply not only to the enactment of a voting system, but also to its maintenance.[72] A facially neutral system may violate the Constitution when it is "conceived or operated" in a discriminatory manner.[73] By focusing narrowly on the system's origins—and by substituting *Gingles* for the governing constitutional framework—the district court failed to apply the correct legal standard. Nothing in this framework requires proof that a minority group could constitute a majority in a hypothetical district.

### 3. The Complaint Plausibly Alleges That the KISD Electoral System Bears More Heavily on Hispanic Voters

Under the correct standard, Plaintiff-Appellant's allegations satisfy the requirement to plead discriminatory effect.[74] The complaint alleges that the at-large electoral system, combined with staggered and off-cycle elections, enables a

---

[70] *Rogers*, 458 U.S. at 618 (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)).

[71] *Arlington Heights*, 429 U.S. at 266–68; *Rogers*, 458 U.S. at 619–27; *see also* S. Rep. No. 97-417, at 28–29 (1982) (Senate Factors overlap with constitutional intent inquiry).

[72] *Rogers*, 458 U.S. at 622–23 (affirming liability based on continued maintenance of at-large system with known discriminatory effects).

[73] *Davis*, 426 U.S. at 241–42; *Arlington Heights,* 429 U.S. at 264–65; *cf. Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886) (facially neutral law applied discriminatorily violates Equal Protection).

[74] ROA.203–04; *Rogers*, 458 U.S. at 618; *Iqbal*, 556 U.S. at 678.

cohesive white voting bloc to control all seats on the Board and prevents Hispanic voters from electing candidates of their choice.[75]

The complaint also alleges concrete disparities in representation and outcomes, including that all trustees are white and disproportionately reside in the wealthier, predominantly white portion of the District, while Hispanic residents are concentrated elsewhere and lack representation.[76] These allegations plausibly establish that the system operates to dilute Hispanic voting strength and "bears more heavily" on Hispanic voters than on others.[77]

At the pleading stage, no more is required. Plaintiff-Appellant is not obligated to prove causation, quantify disparities with precision, or satisfy any rigid threshold test. It is enough that the complaint plausibly alleges unequal electoral opportunity— and it does.

### 4. The Complaint Plausibly Alleges That Defendants-Appellees Maintain the Electoral System for Discriminatory Purposes

The complaint likewise plausibly alleges discriminatory intent under the governing *Zimmer* framework.[78] Plaintiff-Appellant alleges a history of discrimination in Texas voting practices, including the use of at-large systems to

---

[75] ROA.203–04; *Rogers*, 458 U.S. at 616–17 (at-large system combined with racial bloc voting central to constitutional dilution finding).

[76] ROA.190, 205–09; *see Arlington Heights*, 429 U.S. at 266 (historical background and sequence of events relevant to discriminatory purpose inquiry).

[77] *Davis*, 426 U.S. at 242; *Rogers*, 458 U.S. at 618; ROA.616–17.

[78] *Rogers*, 458 U.S. at 618–27; ROA.203–09; ROA.215–18.

dilute minority voting strength, as well as persistent racially polarized voting within KISD.[79] These allegations establish a context in which the discriminatory effects of the electoral system are both foreseeable and longstanding.

Plaintiff-Appellant further alleges that Defendants-Appellees have maintained the at-large system despite these known effects and without any legitimate policy justification.[80] That allegation is critical: constitutional liability attaches not only to the initial adoption of a system, but to its continued use in the face of known discriminatory consequences.[81]

The complaint also identifies specific evidence of unresponsiveness and discriminatory purpose, including allegations that the Board has disregarded minority concerns and pursued policies that disproportionately harm Hispanic students and communities.[82] It further alleges that Defendants-Appellees considered

---

[79] ROA.203–08; ROA.215–18; *White v. Regester*, 412 U.S. 755, 766–67 (1973) (history of exclusion of minorities from Texas political process relevant to dilution claim); *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 439–40 (2006) (LULAC) (recognizing history of voting discrimination against Latinos in Texas).

[80] ROA.203–08; ROA.215–18; *see Rogers*, 458 U.S. at 625 (tenuousness of policy justification for maintaining challenged system supports discriminatory intent finding); *Arlington Heights*, 429 U.S. at 267–68.

[81] *Rogers*, 458 U.S. at 622–23; *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("'Discriminatory purpose'…implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker…selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."); *Hunter*, 471 U.S. at 227–28.

[82] ROA.203–11; *see Rogers*, 458 U.S. at 625 (unresponsiveness of elected officials to minority community's needs supports inference of discriminatory purpose); *Arlington Heights*, 429 U.S. at 268.

restructuring the District in a manner that would have concentrated minority populations and resources along racial and socioeconomic lines—evidence that reinforces an inference of discriminatory intent rather than undermines it.[83]

Taken together, these allegations plausibly support the inference that Defendants-Appellees "selected or reaffirmed" the at-large system at least in part because of its adverse effects on Hispanic voters. That is sufficient to state a claim.

### 5. Plaintiff's Allegations More Than Satisfy Rule 12(b)(6)

At the Rule 12 stage, the Court must accept Plaintiff-Appellant's well-pleaded allegations as true and draw all reasonable inferences in his favor.[84] The question is not whether Plaintiff-Appellant will ultimately prevail, but whether his claim is plausible.

Here, Plaintiff-Appellant alleges a voting system that predictably excludes Hispanic voters from representation, a pattern of racially polarized voting, a history of discrimination, a lack of responsiveness by elected officials, and the continued maintenance of that system despite its known effects. These are precisely the types of allegations courts rely upon to infer discriminatory purpose in vote dilution cases.

---

[83] ROA.203–11; *see Arlington Heights*, 429 U.S. at 266–68 (sequence of events and departures from normal procedures relevant to discriminatory purpose); *cf. Shaw v. Reno*, 509 U.S. 630, 646–47 (1993) (racial sorting of populations by governmental actors warrants heightened scrutiny).

[84] *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *Leal*, 731 F.3d at 410 (court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff").

By contrast, the district court required Plaintiff-Appellant to satisfy a rigid, extra-textual threshold drawn from an inapposite statutory framework. That was legal error. Because Plaintiff-Appellant plausibly alleged both discriminatory effect and discriminatory intent under the governing constitutional standards, dismissal was improper.

### 6. Because Plaintiff Plausibly Alleged Intentional Vote Dilution, the Judgment Should Be Reversed

The Constitution does not condition relief for intentional discrimination on geographic compactness or any other *Gingles* factor. By imposing such a requirement, the district court foreclosed Plaintiff-Appellant's claims based on an erroneous legal standard. Under the correct framework, Plaintiff-Appellant's allegations are more than sufficient to proceed. The judgment should be reversed, and the case remanded for further proceedings.

### B. This Case Does Not Seek Race-Based Redistricting, Therefore, the District Court Applied the Wrong Legal Standard Under Section 2

### 1. Section 2 Requires a Totality-of-the-Circumstances Inquiry

Section 2 of the Voting Rights Act prohibits any voting practice or procedure that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color."[85] The statute further provides that a violation is established if, "based on the totality of circumstances," members of a protected class

---

[85] 52 U.S.C. § 10301(a).

"have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."[86] This text supplies the governing legal standard.

The Supreme Court has repeatedly emphasized that Section 2 requires a "searching practical evaluation of the past and present reality" and a "functional" analysis of how an electoral system operates in context.[87] That inquiry is inherently fact-intensive and depends on local conditions, not rigid doctrinal prerequisites.[88] Congress confirmed as much in the 1982 amendments to the Act, which rejected a results test tied to intent and instead codified a flexible, totality-of-the-circumstances framework.[89]

To guide that inquiry, courts consider the "Senate Factors," which include, among other things, the extent of racially polarized voting, the use of electoral practices that enhance the opportunity for discrimination, the exclusion of minority candidates from office, and the broader social and historical conditions affecting political participation.[90] These factors are not elements, and no single factor is

---

[86] *Id.* § 10301(b).

[87] *Gingles*, 478 U.S. at 45 (quoting S. Rep. No. 97-417, at 30 (1982)).

[88] *Johnson*, 512 U.S. at 1018.

[89] S. Rep. No. 97-417, at 15–16 (1982); *Gingles*, 478 U.S. at 35–37.

[90] *Gingles*, 478 U.S. at 36–37; S. Rep. No. 97-417, at 28–29.

dispositive.[91] Rather, they "typically guide" the ultimate determination whether minority voters possess an equal electoral opportunity.[92]

Nothing in the text of Section 2 imposes a categorical threshold requirement that a plaintiff must satisfy before a court may conduct this inquiry. To the contrary, the statute directs courts to evaluate the challenged electoral system "based on the totality of circumstances," without limitation to any particular doctrinal framework.[93] The Supreme Court has likewise cautioned against transforming its analytical tools into rigid rules that displace the statutory standard.[94] And *Callais* confirms this today.[95] Rather than strict adherence to prior precedent, *Callais* emphasizes that factors such as "current data" and "'current political conditions' that shed light on current intentional discrimination" are "far more germane."[96] Therefore the framework must "align[] with the statutory text and reflects important developments" since *Gingles* was decided.[97]

The district court's opinion wholly departs from that framework. Instead of evaluating Plaintiff's allegations under the totality of circumstances, it required

---

[91] *Gingles*, 478 U.S. at 45–46.

[92] *Id.* at 45.

[93] 52 U.S.C. § 10301(b).

[94] *Johnson*, 512 U.S. at 1017–18.

[95] *Louisiana v. Callais*, No. 24–109, slip op. at 26, 31 (U.S. April 29, 2026).

[96] *Id.* at 31.

[97] *Id.* at 26.

Plaintiff-Appellant to satisfy the first *Gingles* precondition and treated the failure to do so as dispositive.[98] That approach replaces the statute's text with a categorical rule and forecloses claims that fall outside the specific context in which *Gingles* arose. Section 2 does not compel that result, particularly at the pleading stage.

### 2.  *Gingles* Is Not a Universal Requirement

The *Gingles* preconditions are important, but they are not the text of Section 2.[99] They are a judicial framework developed to determine whether a minority group could obtain greater electoral opportunity through the creation of a reasonably configured single-member district remedy.[100] That matters here because Plaintiff-Appellant does not seek a single-member district.[101] The first precondition addresses whether a single-member district can be drawn in which minority voters could elect their preferred candidate; it does not determine whether an alternative electoral system could provide that opportunity. Accordingly, an at-large system was challenged and cumulative voting was proposed as the remedy.[102] While this Court

---

[98] ROA.518–24.

[99] 52 U.S.C. § 10301(b); *Gingles*, 478 U.S. at 50–51 (explaining that the preconditions address whether a minority group could demonstrate the potential to elect its preferred candidate in a reasonably configured single-member district).

[100] *Gingles*, 478 U.S. at 50–51; *Growe v. Emison*, 507 U.S. 25, 40 (1993).

[101] ROA.322–24.

[102] ROA.322–24.

has applied *Gingles* in districting cases, it has not held that those preconditions categorically bar a claim where the plaintiff does not seek a district-based remedy.

The Supreme Court has never held that *Gingles* governs every Section 2 case. In *Gingles*, the Court expressly limited the question before it.[103] The Court stated that it had "no occasion" to decide what standard would apply to a claim brought by a minority group that could not constitute a majority in a single-member district but alleged impaired electoral influence.[104] That reservation is inconsistent with the district court's categorical rule.

Later decisions confirm the same point. In *Growe v. Emison*, the Court applied *Gingles* to a single-member districting claim because the proposed remedy still depended on drawing a district in which minority voters could elect their candidate of choice.[105] The Court explained that the compactness and cohesion requirements are needed to show that minority voters have the potential to elect a representative "in some single-member district."[106] That rationale does not automatically control where the plaintiff seeks a non-districting remedy.

---

[103] *Gingles*, 478 U.S. at 46 n.12.

[104] *Id.*

[105] *Growe*, 507 U.S. at 40–41.

[106] *Id.* at 40.

Nor does *Bartlett v. Strickland* compel a different result. There, the Court considered whether Section 2 required creation of a crossover district.[107] The plurality adopted a majority-minority requirement in that districting context because courts and legislatures needed a workable rule for drawing district lines.[108] The decision did not hold that the same requirement applies to every Section 2 challenge, regardless of the electoral structure or remedy.

The Supreme Court's own practice confirms that *Gingles* is not a universal prerequisite. In *Brnovich v. Democratic National Committee*, the Court addressed a Section 2 challenge to time, place, and manner voting rules and did not apply the *Gingles* framework.[109] Instead, it articulated context-specific guideposts tailored to the type of claim presented.[110]

That approach is inconsistent with the district court's categorical rule. If *Gingles* governed every Section 2 claim, the Court would have applied it in *Brnovich*. It did not. The same principle applies here: where the claim challenges an at-large system and seeks a non-districting remedy, the analysis must follow the statute's text and the nature of the claim, not a framework designed for a different context.

---

[107] *Bartlett v. Strickland*, 556 U.S. 1, 6–7 (2009) (plurality opinion).

[108] *Id.* at 17–18.

[109] *Brnovich v. Democratic National Committee*, 594 U.S. 647, 664, 686–87 (2021).

[110] *Id.* at 664, 686–87.

To be clear, Plaintiff-Appellant does not ask this Court to disregard *Gingles*. Plaintiff asks only that *Gingles* be applied according to its rationale. The first precondition tests whether a minority group can form a majority in a reasonably configured single-member district.[111] That test makes sense when the alleged injury and the proposed remedy depend on district geography. It does not resolve whether an at-large, staggered election system unlawfully denies equal electoral opportunity when the proposed remedy is cumulative voting.

Section 2 itself confirms that distinction. The statute asks whether, under the totality of circumstances, minority voters have less opportunity to participate in the political process and elect representatives of their choice.[112] That inquiry is functional. It focuses on electoral opportunity, not on one remedial form. The district court erred by treating *Gingles* as a universal gateway and by refusing to conduct the statutory inquiry once Plaintiff-Appellant conceded that he could not satisfy the first precondition.[113] Nothing in this argument diminishes the role of the *Gingles* framework in cases where plaintiffs seek a single-member-district remedy. At minimum, whether *Gingles* applies to a non-districting claim seeking cumulative voting is a question that should not be resolved on the pleadings alone.

---

[111] *Gingles*, 478 U.S. at 50; *Allen v. Milligan*, 599 U.S. 1, 18 (2023).

[112] 52 U.S.C. § 10301(b).

[113] ROA.518–24.

### 3. *Petteway* Does Not Resolve the Question Presented

Defendants-Appellees relied below on this Court's decisions in *Petteway v. Galveston County* to argue that *Gingles* applies categorically to all Section 2 claims.[114] That reliance is misplaced. That decision never addressed the question presented here.

*Petteway* addressed an internal question to the *Gingles* framework—whether distinct minority groups may be aggregated to satisfy the first precondition's numerical threshold.[115] Its holding is correspondingly limited: Section 2 does not require aggregation of politically cohesive but distinct racial or ethnic groups to construct a hypothetical majority-minority district.[116] That analysis presupposes the applicability of *Gingles*. It does not address whether *Gingles* applies where no district-based remedy is sought.

That decision therefore assumes, rather than decides, the applicability of *Gingles*. This case presents the antecedent question: whether *Gingles* governs a non-districting claim seeking cumulative voting as a remedy. *Petteway* does not answer that question.

---

[114] ROA.266.

[115] *Petteway v. Galveston Cnty.*, 111 F.4th 596, 603 (5th Cir. 2024).

[116] *Id.*

### 4. Plaintiff's Claim is a Non-Districting Section 2 Claim

Plaintiff-Appellant's Section 2 claim does not seek the creation of a majority-minority single-member district; instead, it seeks a non-districting remedy—cumulative voting. It challenges Keller ISD's at-large, staggered, off-cycle election system.[117] The theory is that this system, when combined with local conditions, denies Hispanic voters an equal opportunity to participate in the political process and elect candidates of their choice.[118] That is the inquiry Section 2 commands.[119]

The distinction matters. The first *Gingles* precondition asks whether the minority group is sufficiently large and geographically compact to constitute a majority in a reasonably configured single-member district.[120] That requirement is tied to a districting remedy. It tests whether the court can remedy alleged vote dilution by drawing a majority-minority district.[121] Where a plaintiff does not seek that remedy, that geographic compactness inquiry—tied to a single-member-district remedy—does not resolve the statutory question presented here.

---

[117] ROA.616; ROA.637–38.

[118] ROA.616.

[119] 52 U.S.C. § 10301(b).

[120] *Gingles*, 478 U.S. at 50; *Milligan*, 599 U.S. at 18.

[121] *Growe*, 507 U.S. 25, 40 (1993); *Bartlett*, 556 U.S. at 14–15.

Plaintiff-Appellant proposed a different remedy. He sought cumulative voting, not single-member districts.[122] Cumulative voting would allow voters to concentrate their votes behind preferred candidates without requiring new district lines.[123] Texas law expressly permits independent school districts to adopt cumulative voting for trustee elections.[124] Plaintiff-Appellant's theory therefore does not depend on whether Hispanic voters can form a majority in a geographically compact district. It depends on whether Keller ISD's existing system denies equal electoral opportunity under the totality of circumstances.[125] Requiring Plaintiff-Appellant to satisfy the first *Gingles* precondition in this context would force him to prove the feasibility of a single-member district remedy that he does not seek and that would not remedy the alleged injury.

That was the theory Plaintiff-Appellant advanced below. Plaintiff-Appellant explained that the claim was based on "the combination of the staggered at-large voting system and the totality of the circumstances" that allegedly deprive Hispanic voters of equal political opportunity.[126] Plaintiff-Appellant also explained that this

---

[122] ROA.637–38.

[123] ROA.843–44.

[124] Tex. Educ. Code § 11.054.

[125] 52 U.S.C. § 10301(b); ROA.616.

[126] ROA.616.

was not a traditional "vote dilution" claim because the requested remedy was cumulative voting rather than the drawing or redrawing of district lines.[127]

The district court treated that distinction as irrelevant. It held that Plaintiff-Appellant's inability to satisfy the first *Gingles* precondition defeated the Section 2 claim as a matter of law.[128] But that conclusion assumes the very point in dispute. It assumes that every Section 2 vote-dilution claim must be measured by whether a majority-minority district can be drawn. Section 2 does not say that.[129] And no controlling precedent applies that rule to a non-districting claim seeking cumulative voting.

This Court should reject that categorical approach. The proper question is not whether Plaintiff-Appellant can satisfy a districting prerequisite for a districting remedy he does not seek. The proper question is whether the complaint plausibly alleges that Keller ISD's election system gives Hispanic voters less opportunity than other voters to participate in the political process and elect representatives of their choice.[130] That is a Section 2 question. It should be answered based on Section 2's text.

---

[127] ROA.616–17; ROA.637–38.

[128] ROA.518–24.

[129] 52 U.S.C. § 10301(b).

[130] *Id.*; ROA.616.

## 5. The District Court Erroneously Converted *Gingles* Into a Categorical Bar

The district court did not merely apply *Gingles* as a guide. It treated the first *Gingles* precondition as a dispositive legal requirement in circumstances where the plaintiff does not seek a single-member-district remedy. That move altered the governing standard.

The court held that Plaintiff-Appellant's claim fails because he cannot establish that Hispanic voters could form a majority in a single-member district.[131] It then dismissed the case with prejudice on that basis alone.[132] The court did not proceed to evaluate the complaint under the totality of circumstances. That approach replaces the statutory inquiry with a threshold rule.

That is not how Section 2 operates. The statute asks whether, "based on the totality of circumstances," minority voters have less opportunity to participate in the political process and to elect candidates of their choice.[133] The Supreme Court has warned against converting its analytical tools into rigid prerequisites that displace that inquiry.[134] *Gingles* provides a framework for a particular category of claims. It does not override the statute.

---

[131] ROA.518–24.

[132] ROA.518–24.

[133] 52 U.S.C. § 10301(b).

[134] *Johnson*, 512 U.S. at 1017–18.

The district court's reasoning makes that displacement clear. The court acknowledged that Plaintiff-Appellant advanced a non-districting theory and proposed cumulative voting.[135] It nevertheless concluded that the inability to satisfy the first *Gingles* precondition is fatal to the claim.[136] That conclusion assumes that every Section 2 claim must be measured by whether a majority-minority district can be drawn. Section 2 does not impose such a categorical limitation, particularly at the pleading stage.[137]

The error is structural, not case-specific. If the district court's rule were correct, any Section 2 challenge to an at-large electoral system would fail whenever a minority group is geographically dispersed. That would eliminate an entire category of vote-dilution claims, even where the challenged system demonstrably prevents minority voters from electing candidates of their choice. Congress did not enact such a limitation.

The record confirms that Plaintiff-Appellant did not fail to meet *Gingles* by accident. Plaintiff-Appellant expressly proceeded on a different theory. He acknowledged that the first *Gingles* precondition would be difficult to satisfy and concluded, after extensive legal analysis, that *Gingles* does not apply to this type of

---

[135] ROA.516.

[136] ROA.519.

[137] 52 U.S.C. § 10301(b).

claim.[138] The district court rejected that theory as a matter of law without engaging the statutory inquiry.

That is reversible error. The court should have asked whether the complaint plausibly alleges a denial of equal electoral opportunity under the totality of circumstances.[139] Instead, it applied a categorical bar that the statute does not impose. Because the dismissal rests on that legal error, it cannot stand.

### 6. Even if the Court Had Doubts About the Ultimate Merits, Dismissal With Prejudice Was Improper

#### a) Section 2 Claims Are Fact-Intensive

Section 2 claims require a "searching practical evaluation of the past and present reality" and a "functional" analysis of how an electoral system operates in context.[140] That inquiry cannot be reduced to a purely legal determination at the pleading stage. It depends on evidence concerning voting patterns, demographic conditions, electoral structures, and local history.[141] Where a plaintiff advances a legal theory not foreclosed by binding precedent and supported by statutory text, dismissal—even if ultimately affirmed—cannot support a finding of frivolousness.

The Supreme Court has repeatedly emphasized that the totality-of-circumstances inquiry is "intensely local" and requires a "fact-intensive"

---

[138] ROA.851-52.

[139] 52 U.S.C. § 10301(b).

[140] *Gingles*, 478 U.S. at 45 (quoting S. Rep. No. 97-417, at 30 (1982)).

[141] *Johnson*, 512 U.S. at 1011–13.

assessment.[142] Courts must evaluate how the challenged electoral system interacts with social and historical conditions to produce unequal political opportunity.[143] That analysis necessarily turns on evidence, not just pleadings.

This case illustrates the point. Plaintiff-Appellant's claim rests on allegations of racially polarized voting, the structural effects of at-large and staggered elections, and the persistent lack of minority electoral success. Those allegations implicate multiple Senate Factors and require empirical evaluation. Determining whether those conditions amount to a denial of equal electoral opportunity requires factual development, including expert analysis and, where appropriate, statistical evidence.

The record confirms that such evidence exists and was anticipated. Plaintiff-Appellant retained experts to evaluate racially polarized voting and alternative electoral systems.[144] Plaintiff-Appellant also conducted substantial pre-suit investigation into the demographic and electoral conditions within Keller ISD.[145] Those efforts underscore the inherently factual nature of the claim.

Dismissal at the pleading stage short-circuits that process. It prevents the development of the evidentiary record necessary to conduct the totality-of-

---

[142] *Id.* at 1013; *Gingles*, 478 U.S. at 79 (O'Connor, J., concurring in judgment).

[143] 52 U.S.C. § 10301(b).

[144] ROA.851.

[145] ROA.849-52.

circumstances inquiry. That is inconsistent with the structure of Section 2, which contemplates a practical evaluation of real-world conditions.[146]

The Fifth Circuit has likewise recognized that vote-dilution claims generally require factual development. Courts do not resolve such claims based solely on pleadings where the allegations, if true, would support relief. Instead, they proceed to discovery and, where necessary, trial to evaluate the relevant factors in context.

Here, the district court did not allow that process to occur. It dismissed the case based on a categorical legal rule without engaging the factual allegations. That approach is incompatible with the nature of Section 2 claims and provides an independent basis for reversal.

### b) The District Court Improperly Resolved a Novel, Fact-Intensive Section 2 Claim at the Pleading Stage

The district court dismissed this case with prejudice at the Rule 12(b)(6) stage based on a categorical legal rule that foreclosed Plaintiff-Appellant's theory. That was improper for two independent reasons. The claim presents a novel legal question under Section 2, and it depends on a fact-intensive inquiry that cannot be resolved on the pleadings alone.

First, this case raises an unresolved question under Section 2: whether a plaintiff may establish vote dilution where the requested remedy is not the creation

---

[146] *Gingles*, 478 U.S. at 45.

of a single-member district, but an alternative electoral system such as cumulative voting based on the totality of circumstances, without satisfying the *Gingles* preconditions. Neither the Supreme Court nor this Court has squarely addressed that issue.[147] To the contrary, *Gingles* expressly declined to resolve whether Section 2 reaches claims brought by minority groups that cannot form a majority in a single-member district.[148] Where governing law leaves a question open, dismissal with prejudice at the pleading stage is particularly inappropriate.[149]

Second, the claim turns on factual questions that require development of an evidentiary record. Section 2 directs courts to evaluate whether an electoral system interacts with local conditions to deny equal political opportunity.[150] That inquiry depends on evidence concerning voting patterns, demographics, electoral structures, and historical conditions.[151] It cannot be resolved by isolating a single doctrinal factor and treating it as dispositive.

The record confirms that Plaintiff-Appellant's claim was designed for that type of evaluation. These aforementioned steps underscore the reality that the claim is not speculative. It is fact-driven.

---

[147] *See Milligan*, 599 U.S. at 18; *Bartlett*, 556 U.S. at 17–18.

[148] *Gingles*, 478 U.S. at 46 n.12.

[149] *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (distinguishing failure to state a claim from claims lacking an arguable basis in law).

[150] 52 U.S.C. § 10301(b).

[151] *Johnson*, 512 U.S. at 1011–13.

By dismissing the case at the pleading stage, the district court prevented any development of that factual record. It resolved a disputed and unsettled legal question against Plaintiff-Appellant without the benefit of discovery, expert testimony, or evidentiary findings. That approach is inconsistent with Rule 12(b)(6), which requires courts to accept well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor.[152]

The error is compounded by the dismissal with prejudice. Even if the district court had concerns about the legal viability of Plaintiff-Appellant's theory, the proper course was to permit further factual development or, at minimum, allow amendment.[153] Instead, the court terminated the case entirely based on a threshold rule that is neither compelled by the statute nor clearly established by precedent.

Because the district court resolved a novel and fact-intensive Section 2 claim on the pleadings alone, its dismissal cannot stand. The case should be remanded to allow the factual inquiry that Section 2 requires.

---

[152] *Iqbal*, 556 U.S. at 678.

[153] Fed. R. Civ. P. 15(a)(2); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

## C. **Plaintiff Plausibly Alleged a Section 2 Violation**

### 1. **Keller ISD's Election System Dilutes Minority Voting Strength**

Keller Independent School District elects its Board of Trustees through an at-large system with staggered terms and off-cycle elections.[154] All seven trustees are elected district-wide rather than from geographic subdistricts.[155] These structural features define how electoral power is allocated within the District.

At-large elections allow a cohesive majority to control every seat. Where voting is racially polarized, such systems enable majority voters to defeat minority-preferred candidates in each contest. The use of staggered terms reinforces that effect. Because only a subset of seats is contested in any given election, minority voters cannot concentrate their support across the full board. Off-cycle elections further depress turnout, particularly among minority voters, and amplify the influence of the existing majority.[156]

The record reflects these dynamics in practice. Despite a substantial and growing Hispanic population within the District, no Hispanic candidate has been elected to the Board in decades.[157] The absence of minority electoral success is not

---

[154] ROA.203–04.

[155] ROA.203.

[156] ROA.203–04.

[157] ROA.204.

incidental. It is the predictable result of the electoral structure interacting with local voting patterns.

When a jurisdiction combines at-large elections, staggered terms, and low-turnout election timing with racially polarized voting, the result can be a durable barrier to minority electoral opportunity.

These structural features are precisely the types of practices Section 2 directs courts to evaluate. The statute asks whether electoral arrangements "interact[] with social and historical conditions" to produce unequal political opportunity.[158] At the pleading stage, the Court must accept Plaintiff-Appellant's allegations as true and draw reasonable inferences in his favor.[159] Under that standard, the complaint plausibly alleges that Keller ISD's election system operates to dilute minority voting strength.

### 2. The Complaint Alleges Racially Polarized Voting and Bloc Voting

Section 2 liability turns in significant part on whether voting is racially polarized.[160] Racially polarized voting exists when minority voters tend to support different candidates than majority voters, and the majority votes as a bloc to defeat

---

[158] *Gingles*, 478 U.S. at 47.

[159] *Iqbal*, 556 U.S. at 678.

[160] 52 U.S.C. § 10301(b).

the minority's preferred candidates.[161] Where such patterns persist, they can interact with electoral structures to deny minority voters equal political opportunity.

The complaint alleges precisely that pattern in Keller ISD. Plaintiff alleges that Hispanic voters are politically cohesive and that their preferred candidates are consistently defeated by white bloc voting.[162] Those allegations are not peripheral. They go directly to the core concern of Section 2: whether the electoral system operates, in practice, to exclude minority voters from meaningful participation.

The record supports the plausibility of those allegations. Plaintiff-Appellant retained an expert to analyze voting behavior and evaluate racially polarized voting within the District.[163] The complaint relies on that analysis to allege that elections in Keller ISD are characterized by consistent racial polarization.[164] At the pleading stage, those allegations must be accepted as true.[165]

These allegations are sufficient to satisfy the central functional inquiry under Section 2. The Supreme Court has repeatedly recognized that racially polarized voting is a "key element" of a vote-dilution claim.[166] When a cohesive minority

---

[161] *Gingles*, 478 U.S. at 51.

[162] ROA.619–21.

[163] ROA.619–21.

[164] ROA.201–04.

[165] *Iqbal*, 556 U.S. at 678.

[166] *Gingles*, 478 U.S. at 48–51.

group faces a cohesive majority that votes as a bloc, at-large election systems can prevent the minority from electing its candidates of choice.[167] That is the precise harm Plaintiff-Appellant alleges here.

The district court did not engage with these allegations. It did not assess whether the pleaded facts plausibly establish racial polarization or bloc voting. Instead, it treated Plaintiff-Appellant's inability to satisfy the first *Gingles* precondition as dispositive and terminated the case without addressing the core factual allegations.[168] That was error. Even under *Gingles*, racially polarized voting is a critical component of the analysis.[169] And under the statutory standard, it is central to the totality-of-circumstances inquiry.

At minimum, the allegations of racially polarized voting and white bloc voting render Plaintiff-Appellant's claim plausible. They establish the mechanism through which the challenged electoral system denies minority voters an equal opportunity to elect candidates of their choice. That is all that is required at this stage.

### 3. The Complaint Alleges Persistent Minority Electoral Exclusion

A central indicator of vote dilution under Section 2 is the extent to which minority voters have succeeded in electing representatives of their choice.[170]

---

[167] *Id.* at 51.

[168] ROA.518–24.

[169] *Gingles*, 478 U.S. at 48–51.

[170] 52 U.S.C. § 10301(b).

Persistent failure is powerful evidence that the electoral system does not afford equal political opportunity.[171]

The complaint alleges precisely that pattern in Keller ISD. Despite a substantial and growing Hispanic population within the District, no Hispanic candidate has been elected to the Board in decades.[172] This prolonged absence of minority representation is not a single anomalous election cycle. It is a sustained condition.

That allegation directly implicates one of the core Senate Factors: "the extent to which members of the minority group have been elected to public office in the jurisdiction."[173] The Supreme Court has recognized that a consistent lack of minority electoral success—especially when coupled with racially polarized voting— supports an inference that the political process is not equally open to minority voters.[174]

The record further alleges that this exclusion persists even as the demographic composition of the District has changed.[175] Hispanic residents comprise a meaningful share of the population, yet that presence has not translated into electoral

---

[171] *Gingles*, 478 U.S. at 48 n.15.

[172] ROA.204.

[173] S. Rep. No. 97-417, at 29 (1982).

[174] *Gingles*, 478 U.S. at 48–51.

[175] ROA.204.

success.[176] Section 2 is concerned with opportunity, not outcomes alone. But where a minority group is both substantial and politically cohesive, and still unable to elect preferred candidates over an extended period, that disparity is probative of unequal opportunity.

These allegations are sufficient at the pleading stage. Plaintiff is not required to prove causation or quantify the precise degree of vote dilution. He must allege facts that, if true, support a plausible inference that the electoral system denies equal political opportunity.[177] A decades-long absence of minority representation in a jurisdiction with a substantial minority population meets that standard.

The district court did not analyze this evidence. It did not consider whether the persistent lack of minority electoral success, in combination with the alleged structural features and voting patterns, supports a plausible Section 2 claim. Instead, it treated Plaintiff-Appellant's inability to satisfy the first *Gingles* precondition as dispositive and ended the inquiry.[178] That approach ignores a central component of the statutory analysis.

Taken together with the allegations of racially polarized voting and the structure of Keller ISD's election system, the persistent exclusion of minority-

---

[176] ROA.203–04.

[177] *Iqbal*, 556 U.S. at 678.

[178] ROA.518–24.

preferred candidates strongly supports the plausibility of Plaintiff-Appellant's claim. Under Section 2's totality-of-circumstances framework, that is more than sufficient to proceed beyond the pleading stage.

### 4. Cumulative Voting Provides a Viable Alternative Electoral System

Plaintiff-Appellant did not ask the district court to create a majority-minority district. He proposed cumulative voting as a lawful alternative to Keller ISD's at-large system.[179] That distinction is critical because the first *Gingles* precondition tests the feasibility of a single-member district remedy.[180] It does not test whether a different electoral system could provide minority voters equal electoral opportunity.

Cumulative voting allows voters to cast multiple votes for a single candidate or distribute those votes among candidates.[181] In an at-large election, that structure can permit a cohesive minority group to concentrate voting strength and elect a candidate of choice without drawing district lines.[182] It therefore addresses the same functional concern that animates Section 2: whether minority voters have a meaningful opportunity to elect preferred representatives.[183] That distinction is

---

[179] ROA.637–38.

[180] *Gingles*, 478 U.S. at 50; *Growe*, 507 U.S. at 40.

[181] *See, e.g.*, *Dillard v. Chilton Cnty. Bd. of Educ.*, 699 F. Supp. 870, 876 (M.D. Ala. 1988) ("[i]n conclusion, the court holds that the cumulative voting system proposed by the parties is an acceptable remedy for the claimed § 2 violations").

[182] ROA.843–44.

[183] 52 U.S.C. § 10301(b).

dispositive for purposes of the pleading-stage inquiry. A plaintiff need not demonstrate the feasibility of a remedy he does not seek in order to state a claim under Section 2.

Texas law expressly recognizes cumulative voting in school board elections. The Texas Education Code permits an independent school district to elect trustees through cumulative voting.[184] That statutory authorization matters. Plaintiff-Appellant's proposed remedy is not speculative. It is a lawful electoral mechanism available to Texas school districts.

Defendants-Appellees may argue that Section 2 requires an identifiable benchmark against which the challenged system can be measured, and that no such benchmark exists outside the majority-minority district context.[185] That concern does not arise here. Where the proposed remedy is cumulative voting, the benchmark is concrete and administrable.

Courts evaluating cumulative voting systems have long relied on the "threshold of exclusion," which approximates the minimum share of the electorate required for a cohesive group to elect a candidate of choice.[186] When all seats are

---

[184] Tex. Educ. Code § 11.054.

[185] *See Holder v. Hall*, 512 U.S. 874, 880–81 (1994) (plurality opinion).

[186] *See Dillard v. Chilton Cnty. Bd. of Educ.*, 699 F. Supp. 870, 874 (M.D. Ala. 1988).

elected simultaneously, that threshold is calculated as one divided by the number of seats plus one. For a seven-member board, that figure is 12.5 percent.

The current system operates differently. Because Keller ISD employs staggered elections in which only a subset of seats is contested in a given cycle, the effective threshold rises in practice—often substantially—thereby increasing the level of support required for minority voters to elect candidates of choice.[187] That structural feature reinforces the dilutive effect of the at-large system by preventing minority voters from concentrating support across the full board.

By contrast, under a cumulative voting system with non-staggered elections, the relevant threshold would decrease, permitting cohesive minority voters to translate electoral support into representation. At the pleading stage, Plaintiff-Appellant need not prove that outcome, only that a workable and legally recognized alternative exists. The comparison between the current system and the proposed alternative is therefore concrete and administrable, and the *Holder* plurality's concern about indeterminate benchmarks does not apply.

The record also shows that Plaintiff-Appellant advanced cumulative voting as part of his Section 2 theory from the outset. Plaintiff-Appellant further alleged that cumulative voting would allow Hispanic voters to concentrate their electoral support

---

[187] *See* Tex. Educ. Code § 11.059(a)–(c).

and obtain meaningful representation without requiring the creation of single-member districts.[188]

That proposed remedy reinforces the plausibility of Plaintiff-Appellant's claim. A Section 2 plaintiff must identify a benchmark or alternative against which the challenged electoral system can be evaluated.[189] Here, Plaintiff-Appellant identified one. He alleged that Keller ISD's current system prevents Hispanic voters from electing candidates of their choice, and that cumulative voting would provide an electoral mechanism through which they could do so.[190]

The district court's contrary approach improperly collapsed all Section 2 vote-dilution claims into districting claims. Because Plaintiff-Appellant could not show that Hispanic voters could form a majority in a single-member district, the court held that his claim failed.[191] But where the proposed remedy is cumulative voting, geographic compactness does not perform the same function. The relevant question is whether the alternative system would provide minority voters a meaningful opportunity to elect candidates of choice.

At the pleading stage, Plaintiff-Appellant's cumulative-voting allegations were sufficient. They identified a lawful alternative electoral system. They explained

---

[188] ROA.637–38.

[189] *Holder*, 512 U.S. at 880–81.

[190] ROA.218; ROA.843–44.

[191] ROA.518–24.

how that system would address the alleged dilution. And they showed why the failure to plead a majority-minority district should not defeat a non-districting Section 2 claim.

### 5. The Totality of Circumstances States a Plausible Claim

Taken together, the complaint's allegations plausibly establish a violation of Section 2 under the governing totality-of-circumstances standard. Section 2 does not require proof at the pleading stage. It requires only sufficient factual matter to allow a reasonable inference that the challenged electoral system denies minority voters an equal opportunity to participate in the political process and to elect candidates of their choice.[192]

Plaintiff-Appellant satisfied that standard. He alleged an at-large, staggered, off-cycle election system that allows a cohesive majority to control every seat on the Board.[193] He alleged that voting in Keller ISD is racially polarized and that white bloc voting consistently defeats Hispanic-preferred candidates.[194] He alleged a persistent absence of Hispanic electoral success despite a substantial and growing Hispanic population.[195] And he identified a lawful alternative—cumulative voting—

---

[192] 52 U.S.C. § 10301(b); *Iqbal*, 556 U.S. at 678.

[193] ROA.203–04.

[194] ROA.203–04.

[195] ROA.204.

that would provide minority voters a meaningful opportunity to elect representatives of their choice.[196]

These allegations track the core concerns of Section 2. They correspond to multiple Senate Factors, including racially polarized voting, the use of electoral practices that enhance discrimination, and the absence of minority electoral success.[197] The Supreme Court has made clear that these factors are neither exhaustive nor rigid.[198] The ultimate question is whether, under the totality of circumstances, the political process is equally open to minority voters.[199]

At the pleading stage, Plaintiff-Appellant was not required to prove that answer. He was required only to allege facts that make it plausible.[200] The complaint does so. It describes a structural electoral system, a pattern of voting behavior, and a sustained lack of representation that, taken together, support a reasonable inference of unequal electoral opportunity.

The district court did not conduct that analysis. It did not weigh the alleged facts under the totality of circumstances. It did not assess whether the complaint plausibly alleged vote dilution. Instead, it ended the inquiry after concluding that

---

[196] ROA.218.

[197] *Gingles*, 478 U.S. at 36–37; S. Rep. No. 97-417, at 28–29 (1982).

[198] *Gingles*, 478 U.S. at 45–46.

[199] 52 U.S.C. § 10301(b); *Johnson*, 512 U.S. at 1013–14.

[200] *Iqbal*, 556 U.S. at 678.

Plaintiff could not satisfy the first *Gingles* precondition.[201] That truncated approach

conflicts with both the statute and governing pleading standards.

When the proper framework is applied, the result is straightforward.

Plaintiff's allegations, accepted as true, state a plausible claim for relief under

Section 2. The dismissal therefore cannot be sustained.

### D. <u>The Fee Award Must Be Vacated</u>

#### 1. Defendants-Appellees May Recover Fees Only if Plaintiff's Claims Were Frivolous, Unreasonable, or Without Foundation

The district court awarded Defendants-Appellees attorneys' fees after

concluding that Plaintiff-Appellant's claims were "frivolous, unreasonable, [and]

without foundation."[202] That ruling was an abuse of discretion.[203] A prevailing

defendant in a civil-rights case may recover fees only under the narrow standard set

forth in *Christiansburg*.[204] That standard applies to fee requests under both 42 U.S.C.

§ 1988 and the Voting Rights Act's fee provision.[205]

The *Christiansburg* standard is intentionally stringent.[206] It protects civil-

rights plaintiffs from fee awards merely because their claims fail.[207] A claim is not

---

[201] ROA.518–24.

[202] ROA.528.

[203] *Vaughan*, 62 F.4th at 203.

[204] *Christiansburg*, 434 U.S. at 421.

[205] *Vaughan*, 62 F.4th at 203–04; 42 U.S.C. § 1988(b); 52 U.S.C. § 10310(e).

[206] *Christiansburg*, 434 U.S. at 421–22.

[207] *Id.* at 422.

frivolous simply because it is dismissed, rejected, or ultimately unsuccessful.[208] The question is whether the claim was so lacking in arguable legal or factual basis that it was groundless from the outset.[209]

This Court applied that rule in *Vaughan v. Lewisville Independent School District*.[210] There, the Court held that fees were improper where the plaintiff advanced an unsettled Voting Rights Act theory that was not squarely foreclosed by controlling precedent.[211] The Court emphasized that fee awards against civil-rights plaintiffs risk chilling legitimate advocacy and must not punish good-faith efforts to extend existing law.[212]

### 2. Plaintiff's Theory Was Not Squarely Foreclosed by Controlling Precedent

Plaintiff-Appellant's theory was not frivolous. Plaintiff-Appellant argued that Section 2's text permits a non-districting vote-dilution claim based on the totality of circumstances where the plaintiff challenges an at-large system and seeks cumulative voting rather than single-member districts.[213] No Supreme Court decision squarely forecloses that theory.[214] No decision of this Court squarely holds

---

[208] *Id.*; *Hughes*, 449 U.S. at 14–15.

[209] *Vaughan*, 62 F.4th at 203–04.

[210] *Vaughan*, 62 F.4th at 199.

[211] *Id.* at 205–06.

[212] *Id.* at 206.

[213] ROA.203–218.

[214] *Gingles*, 478 U.S. at 46 n.12.

that the first *Gingles* precondition bars every Section 2 claim regardless of the electoral structure challenged or the remedy sought.[215]

*Callais* confirms the point. The Supreme Court's intervening decision recognizes that Section 2 doctrine required clarification, including how courts should apply the statute's text, current factual conditions, and constitutional limits.[216] A claim turning on that unsettled framework cannot be deemed groundless from the outset. Whatever the ultimate merits, *Callais* forecloses treating Appellant's theory as frivolous, unreasonable, or without foundation.[217]

At minimum, Plaintiff-Appellant advanced a good-faith request to extend existing law. Plaintiff-Appellant acknowledged that satisfying the first *Gingles* precondition would be difficult.[218] Plaintiff then proceeded on the theory that *Gingles* does not control this type of claim because the requested remedy is cumulative voting, not a majority-minority district.[219] That position may be contested, but it is not frivolous.

The record confirms that Plaintiff-Appellant's claims were developed through substantial investigation. Counsel reviewed the statute, legislative history, and

---

[215] *See Vaughan*, 62 F.4th at 205–06.

[216] *Callais*, No. 24-109, slip op. at 26–29.

[217] *Callais*, No. 24-109, slip op. at 2, 26, 31; *Vaughan*, 62 F.4th at 205–06.

[218] ROA.851-52.

[219] ROA.851-52.

relevant federal authority before filing suit.[220] Counsel also retained experts to evaluate racially polarized voting and alternative electoral systems.[221] The firm spent more than 250 hours on the matter before filing the original complaint.[222] That factual and legal investigation is inconsistent with a finding that the claims were groundless.

Nor was Plaintiff-Appellant's claim factually baseless. The complaint alleged an at-large, staggered, off-cycle election system.[223] It alleged racially polarized voting and white bloc voting.[224] It alleged the persistent absence of Hispanic electoral success despite a substantial Hispanic population.[225] And it proposed cumulative voting as a lawful alternative electoral system.[226] Those allegations provide at least an arguable factual basis for a Section 2 claim.

The district court's contrary conclusion rested on the same categorical *Gingles* rule that underlies the dismissal.[227] The court reasoned that Plaintiff-Appellant's inability to satisfy the first *Gingles* precondition rendered the claims frivolous.[228]

---

[220] ROA.849-52.

[221] ROA.851.

[222] ROA.850.

[223] ROA.203–18.

[224] ROA.203–18.

[225] ROA.203–18.

[226] ROA.637–38.

[227] ROA.518–28.

[228] ROA.518–28.

But if the applicability of *Gingles* to this non-districting claim is unsettled, then Plaintiff-Appellant's argument cannot be frivolous under Vaughan.[229]

### 3. The Fee Award Rests on the Same Legal Error as the Dismissal

The fee award cannot be separated from the dismissal. The district court deemed Plaintiff-Appellant's claims frivolous because it concluded that binding precedent foreclosed any Section 2 claim absent satisfaction of the *Gingles* preconditions.[230] That was the same legal premise the court used to dismiss the complaint with prejudice.[231]

If the district court applied the wrong legal standard, the fee award necessarily falls. A fee award based on an erroneous view of the governing law is an abuse of discretion.[232] That principle applies with particular force here because the district court did not merely reject Plaintiff-Appellant's theory. It treated the theory as baseless for failing to comply with a rule that Section 2 does not impose in categorical terms.[233]

---

[229] *Vaughan*, 62 F.4th at 205–06.

[230] ROA.518–24.

[231] ROA.518–28.

[232] *Vaughan*, 62 F.4th at 203.

[233] ROA.518–24.

The appropriate disposition is vacatur. If this Court reverses the dismissal, Defendants-Appellees are no longer prevailing parties on the merits.[234] Even if the Court remands without deciding ultimate liability, the fee award still cannot stand because Plaintiff-Appellant's theory is not frivolous under the governing standard.[235]

The fee award should be vacated.

E.  **The Supreme Court's Decision in *Louisiana v. Callais* Provides an Independent Basis for Remand**

When revisiting Section 2 of the Voting Rights Act in *Callais*, the United States Supreme Court put it plainly—"[t]his is not the easiest language to parse[.]"[236] The language of Section 2 of the Voting Rights Act has become the source of significant doctrinal confusion.[237] And as Justice Alito observed, "*Gingles* was decided at a time when this Court often paid insufficient attention to the language of statutory provisions, and Justice Brennan's opinion for the Court followed this pattern."[238] "Instead of analyzing what the statute said, the opinion simply 'quoted

---

[234] *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–05 (2001).

[235] *Vaughan*, 62 F.4th at 205–06.

[236] *Callais*, No. 24–109, slip op. at 19.

[237] *See Id.* at 7–11, 19

[238] *Id.* at 7.

the text of amended §2 and then jumped right to the Senate Judiciary Committee Report."[239]

Following *Gingles*, the Court continued to modify the framework based on the circumstances that arose with the progression of time. These changes were not only appropriate but necessary as they reflected "important developments" since *Gingles* was decided.[240] Plaintiff-Appellant's case is no different and epitomizes those developments. To dismiss Plaintiff-Appellant's case wholesale based on strict adherence to prior precedent is not only inconsistent with the Court's reasoning in *Callais* but belies antithetical to the very purpose of the Voting Rights Act.

Section 2 "imposes liability" when "the evidence supports a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race."[241] By dismissing Plaintiff-Appellant's claims, the District Court ensured that neither he nor any similarly situated Section 2 plaintiff would ever have the opportunity to utilize discovery to uncover evidence of discrimination, or present their case. Indeed, Plaintiff's claims epitomize the results the Supreme Court set to achieve in *Callais*. The Court condemned the use of race-based illustrative maps as "unconstitutional" racial gerrymandering.[242] Despite this, the

---

[239] *Id.* at 7.

[240] *Callais*, No. 24–109, slip op. at 26.

[241] *Id.* at 26.

[242] *Id.* at 29, 35

62

District Court held that Plaintiff-Appellant's case should be dismissed. This is manifest error. Accordingly, this case should be remanded to allow discovery on Vallejo's intentional discrimination claims, as contemplated by *Callais*.[243]

## IX.    <u>CONCLUSION</u>

The district court's judgment rests on a legal rule that Section 2 does not impose. By converting the *Gingles* preconditions into a categorical bar and refusing to conduct the statute's required totality-of-the-circumstances inquiry, the court displaced the governing standard and terminated a fact-intensive claim at the pleading stage. The complaint plausibly alleges that Keller ISD's at-large, staggered, off-cycle election system—operating in the context of racially polarized voting and persistent minority electoral exclusion—denies Hispanic voters an equal opportunity to participate in the political process and to elect candidates of their choice. At a minimum, those allegations required factual development, not dismissal with prejudice.

The judgment should also be reversed because, in light of *Callais*, the district court was required to evaluate whether Appellant's allegations plausibly support a present-day inference of intentional discrimination. The constitutional claims did not rise or fall with the first *Gingles* precondition. Nor could they be dismissed by incorporation of the court's Section 2 analysis. They required the court to ask

---

[243] *See Callais*, No. 24–109, slip op. at 36.

whether Keller ISD's at-large, staggered, off-cycle system bears more heavily on Hispanic voters and has been maintained, at least in part, because of that effect. The complaint alleges precisely the facts that make that inquiry necessary: racially polarized voting, persistent exclusion of Hispanic-preferred candidates, an all-white Board, local disparities in representation and responsiveness, and the continued maintenance of an electoral structure that predictably prevents Hispanic voters from electing candidates of choice. At minimum, *Callais* requires remand for factual development and application of the correct intentional-discrimination framework.

The fee award compounds that error. Plaintiff-Appellant advanced a deliberate, good-faith Section 2 theory grounded in the statute's text, supported by substantial pre-suit investigation, and not foreclosed by controlling precedent. Under settled law, such claims are not frivolous, unreasonable, or without foundation. Plaintiff-Appellant therefore respectfully requests that this Court reverse the judgment dismissing his statutory and constitutional claims with prejudice, vacate the award of attorneys' fees, and remand this case for further proceedings under the correct legal standards.

Dated: April 29, 2026

Respectfully submitted,

**BREWER STOREFRONT, PLLC**

By: */s/ William A. Brewer III*
    William A. Brewer III
    State Bar No. 02967035
    Joshua H. Harris
    State Bar No. 24127306
    1717 Main Street, Suite 5900
    Dallas, Texas 75201
    Telephone: (214) 653-4000
    Facsimile: (214) 653-1015

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th of April, 2026, I caused to be filed this Appellant's Brief through the Fifth Circuit's CM/ECF filing system on all counsel of record.

/s/    *William A. Brewer III*
William A. Brewer III

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this Appellant's Brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(B)(i) & 32(a)(7)(B) because this brief contains 12,660 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

/s/    *William A. Brewer III*
William A. Brewer III

April 29, 2026